The next case on the call of the docket this morning is number 17, 125508 Policemen's Benevolent Labor Committee v. The City of Sparta. When you're ready, Ms. Lica, you can proceed. Thank you, Chief Justice Burke. Good morning, Justices, Council, members of the public. May it please the Court, my name is Jill Lica, and I and my colleague, Paul Denham, represent the City of Sparta in this matter. This is a case about the City of Sparta's activity points system that does not require officers to write a specific number of citations, but does give credit to an officer who writes a ticket in the city's activity points system, basically the officer's performance evaluation system. So the issue before this Court is whether the City of Sparta system, and indirectly whether many other systems across the state that are similar, violates what is commonly known as the Illinois Quota Act. Basically, whether the Quota Act prohibits something other than quotas. So the appellate court basically focusing on one particular section of the act said that the system did. We, the City, disagree and ask this Court to reverse the judgment of the appellate court. So let me talk just briefly about the facts. I mean, since we are here on cross motions for summary judgment, they really aren't in dispute, but I think there are a few that are important. This system dates to 2013, prior to 2015 when the Quota Act was enacted. The purpose of the activity point systems is to ensure that officers are busy doing the work that they were hired to do. Each week, patrol officers' activities in the form of investigatory activity, patrol activity, community-related activities are tracked. And then officers are assigned points for activities that fall within those essential functions of an officer. So it could be pulling someone over. It could be working a non-criminal case. It could be working on an investigatory case. It could be a traffic stop. It could be writing a warning. And then, of course, because enforcement is part of an integral function of an officer, an officer could receive points if the officer in his good discretion determined to write a ticket. At the end of the month, those points are totaled, and to see whether the officer met the officer's points that had been predetermined. Again, though, none of these points are broken out. There is no, while there is credit for citations, it is really undisputed here that anybody is required to write a specific number of citations or whether it be a predetermined number or a number that's determined by looking at another officer's points. So there is no specific number, no comparison. Undisputed that officers decide to use their discretion about whether they want to write a ticket. Officers decide how they get their points. They can get their points by doing any number of other activities. And, in fact, in this particular case, officers of this department have, in fact, met their points by doing other activities other than citations. So just turning again to this case, this is a case of first impression, and it is a case that will not only affect the City of Sparta, but will indirectly, perhaps directly, affect a myriad of other systems that are in place across the State, according to the Illinois Chief Civil Police that filed an amicus curiae, or the amicus curiae in this case. Here it is also disputed that, or undisputed, that the case and the review is de novo. The appellate court in this case, by focusing on one particular provision of, again, what we're calling the Quota Act, determined that the language was clear and determined that any consideration of quotas whatsoever, regardless of whether or not they were – officers were required to write a certain number, was somehow impermissible. However, that construction turns both the language of the statute as well as the legislative history on its head. Contrary to the appellate court argument and decision, whether you look – determine the language is clear and look at the clear language only, or whether you would consider extrinsic evidence in the form of legislative So let's talk a little bit about the clear language of the statute, if we might. According to the principles of statutory construction, the statute must be read as a whole, not one sentence in isolation. And all the – it must be read in a way that all provisions are given effect. So if you look at the Quota Act, there are basically four different sentences that focus one on one what is prohibited as well as what is permitted under the Act. So in order to determine the legislative intent and whether it's clear or not, all of those provisions must be read as a whole. And when you do that, that leads to only one inescapable conclusion, and that – that is that all the legislature intended to prohibit were quotas. They were intending to prohibit a department from saying Officer A, you have to write ten tickets today, or Officer B, you have to write five tickets today. They were not trying to do anything more. And the reason that they were doing this is because there had been concerns about whether office – or whether departments were imposing quotas as a form of raising revenue to the negative impact on officer discretion. So they wanted to emphasize officer discretion to choose to write tickets, not to de-incentivize or penalize an officer for doing so. So if we look at the four languages of the statute, the first statute says – or the first sentence says basically that you can't – a municipality can't require an officer to write a specific number of citations within a specific period of time. It also goes on to say that that same municipality may not compare the number of citations that an officer writes to the specific number of citations that another officer writes. So that is prohibitory language. Then in more permissive language, obviously intended to distinguish the prohibited conduct in the first two sentences from the permissible language, the statute states nothing in this section shall prohibit a municipality from evaluating an officer based on the police officer's points of contact. And then it goes on to define what points of contact are. Finally, in a further effort to clarify what is permissible versus impermissible, the statute goes on to explain that the quantifiable points of contact, obviously a reference to the third sentence, do not include either the issuance of citations or the number of citations issued by a police officer. So here, if you read the sentences as a whole, starting with the section heading, which is actually called quotas prohibited, and then you read those four sentences together, it basically leads to the inescapable conclusion that employers may not require an officer to write a specific number of citations within a specific period of time or compare the number of citations that one officer writes to, excuse me, to another officer, but that that municipality can impose such a requirement and evaluate an officer based on other points of contact, as opposed to writing a citation as long as those quantifiable contacts do not include a requirement that an officer write a specific number of tickets or issue a specific number of tickets. So by way of example, a department could say, for example, write, you have to write 30 traffic, you have to make 30 traffic stops, you have to make 10 arrests, or you have to have 50 activity points total. But what it can't say is that in the course of that, 10 of those matters, 10 of those activities need to be writing tickets. And that's really all this does. This interpretation, the one that I've just laid out for you, not only reads all the provision of the statute in concert, doesn't leave any out, but it also gives effect to the legislative history and to the heading of the statute itself. So because the city of Sparta's system does not impermissibly break any of these rules, it can't be in violation of the Proto Act. So if we just move on and if we talk about reading these together to give effect to all of these provisions, it leads also to the conclusion that this is an interpretation that mirrors or matches what is the commonly understood definition of a quota. And I think we all understand that a quota is requiring somebody to do a certain amount of work. And that's what was intended here. The section heading says quotas prohibited. So reading it this way, that's the result we get. Also, if we consider the fact that if the legislature had intended to prohibit the consideration of citations at all, it obviously could have adopted a statute that says you can't look at whether an officer writes tickets, or you can't consider tickets at all in any kind of evaluation system. That would have been a much simpler way of addressing this. But the legislature didn't do that, so we cannot assume that that's what they intended. And it's also a reflection that the interpretation of the appellate court did not match that of the legislative intent. And that really leads us into the appellate court decision and the union's interpretation, which, in our view, impermissibly reads one sentence in isolation. Secondly, ignores that common dictionary definition of a quota. And really, most importantly, impermissibly renders those first two sentences meaningless. So if the union and the court is correct, the appellate court was correct that the Quota Act, or that a city can violate the Quota Act, the fourth sentence of the Quota Act, by just allowing citations to be given some consideration at all, then one has to ask, well, what is the meaning of the first two sentences of the Act, which have very specific prohibitions? I mean, basically, this broad interpretation of the fourth sentence of the Act would render meaningless those first two sentences. And obviously, that's not what the legislature intended. There's really no coherent way to honor the statutory principles, and when we look at the decision of the appellate court or the interpretation advanced by the union. I think as significantly, the union's interpretation would really lead to an absurd result here. Assuming, for argument's sake, that officers could not receive any credit at all for the any activities associated with writing tickets, officers would actually be penalized then for writing tickets. So writing a ticket is obviously more time consuming than just pulling someone over, making a stop. I mean, I'm sure most of us have received a traffic ticket at some point or another, and we know if we get off with a warning, then the officer gets to go home earlier. If we, the officer gets us a ticket, we wait while it gets written up. So writing a ticket is more time consuming. However, according to the union's theory, an officer who uses his good judgment to issue a ticket would receive no credit, no points for activity, for the disincentive for officers who do their jobs and write tickets to citizens who deserve them. Officers who still decide to write tickets would have to do even more activities in order to get the same amount of points. Or if the disincentive works, then every citizens who actually deserve tickets in order to promote good law-abiding behavior might not be getting them. And if we are not engaging in enforcement activities, then there's no incentive for people not to, or incentive for people to obey the law, which might lead to more violations, may lead to more accidents, and on and on. So this very real potential result is clearly very far removed from the concept of a quota system and the intent of the legislature to prohibit quotas while at the same time promoting officer discretion. Counsel, does the SPARTA system evaluate officers based on points of contact? I'm sorry, do what? Does the SPARTA system evaluate officers based on points of contact? It does. It doesn't, let me back up and say, so it gives points to specific activities that are all then added together to create a points of contact. And so the system compares points of contact during the month to the required number of points of contact in the system. And do the points of contact include issuing citations? They do include the issuance of citations. However, there is not a specific number of citations that is required, nor does the evaluator who is saying, this officer had 65 points of contact this month, compared to the 65 that are required. The person doing the evaluation does not know what number of those, if any, and it could be none, are based on citations. So... Why wouldn't we just take the statute at face value, the first sentence that says don't compare number of citations, the second says nothing prohibits evaluating based on points of contact, the third defines points of contact, and the fourth says points of contact do not include citations. Right. And... So why isn't that the easy reading of the statute? But when you read the statute, you have to look at it to say you, the first two sentences don't just say you can't require citations or you can't compare. They basically say that you can't require a specific number of citations in a set period of time. However, you can require an officer to do other things. And then that last sentence really relates back to the first two sentences, which says this is impermissible, this is permissible, but, oh, by the way, remember that this is not impermissible. There is nothing in the statute that says that you can't consider citations at all. It basically says you can't base an evaluation system on those requirements, on those numbers, but nowhere does it say that you can't consider those. It is a, arguably, it could have been more clearly written to effectuate the legislative intent. However, we all know that sometimes these things get rushed and sometimes the legislature may not say things as clearly as they intended them. Here, we have, I think, offered a very reasonable interpretation, we at the city, of how this can be read as a whole to effectuate what we believe to be the intent of the legislature. The appellate court and the union has offered another interpretation. To the extent that you think that both of those are reasonable conclusions, then obviously the principles of statutory construction allow you to consider extrinsic evidence. And here the extrinsic evidence comes in the form of significant, very significant legislative debate. And if you look at that legislative debate, it is very clear what the legislature intended. There are two things in the bill, both the House and the Senate sponsors, that suggest that all this act was intending to do was to prohibit quotas, nothing else. So House sponsor Hoffman says as long as the department does not require a ticket quota or compare officers, this bill will not affect them. He goes on to say the only thing this bill requires is a ticket quota in a designated period of time. He further says if a ticket should be written, a ticket should be written, but we wouldn't say that you have to write 150 tickets. And, you know, Andy Menard, the Senate sponsor, basically says the same thing. So in conclusion, we believe that whether you determine this act to be clear or ambiguous, the city of Sparta's system should be determined to be permissible, and the appellate court decision should be reversed. Thank you. Thank you, Ms. Lica. Mr. Boiles. Thank you, Your Honor. May it please the Court? Ms. Lica, Mr. Denham. The law under review defines the phrase points of contact in the third and fourth sentence. The third sentence of that second paragraph says what points of contact may include. The fourth sentence of that second paragraph states what may not be included. And the fourth sentence of that second paragraph states points of contact shall not include either the issuance of citations or the number of citations issued by a police officer. Nonetheless, the city argues, on page 15 of its original brief, that municipalities retain authority to count citations written as a point of contact. The issue in this case is, therefore, can the city do what the law expressly prohibits? This is not a close question. Additionally, it's worth noting that there's no argument from the city that the law is unconstitutional. The city is not asking this Court to strike the law down. Instead, its position is that the law as written does not prohibit, but instead permits, its points of contact policy to include either the issuance of citations or the number of citations issued by a police officer. This matter involves a complaint for declaratory judgment. That complaint, the second amended complaint, alleged the city policy as implemented, interpreted, or applied, conflicted with the policy, violated the law. The appellate court based its decision on the following facts. The policy, the city policy states that the city uses a system of monthly activity points to track officer performance. The policy requires full-time officers to meet the points minimum on a monthly basis. The point system is an evaluation policy. Those two words appear at the bottom of page 12 of the appellate court decision. The city awards two points for issuing a citation. Day shift officers must accumulate 82 points per month. Night shift officers must accumulate 65 points per month. These thresholds are the product of averages on the respective ships. That's important for the statute's reference to comparisons. Failure to reach the point totals each month results in discipline. That is the undisputed city policy at issue in this case. The city awards two points for issuing a citation. The city states that the city counts citations if an officer writes them. On page 6 of its reply brief, the city stated that it compares officers on the basis of cumulative activity points. Applying those facts to the law at issue establishes that summary judgment for the union was proper. It is beyond dispute that the city policy violates the law as it is stated. Is it your position that any consideration of number of citations would be improper? I don't know that I would go that far. We're talking about a point system. Is the problem that they get two points for a ticket and one point for other things? Is that a problem? It's a problem, but it's not the problem. The problem is, it's page 273 in the record, it's the city's activity point system. It says citations, two points each. Had this activity point system not made reference to citations, I don't know that we'd be here. The problem is that their activity point system includes, rather than excludes, the practice of citations. The practice of citations is the practice of either issuing a citation, the city's argument is, well, you know, these officers spend time, more time writing a ticket than they do issuing a warning. So that's the issuance of a citation the city is referencing. And they make that argument to justify the two points. So there's definitely the issuance of the citation involved, and they also count the citations and issue them two points each. I don't know that we'd be here. The city has made the argument that the appellate court nullified the law's first paragraph. That claim lacks merit, because the facts in this case, the written policy at issue, is an activity point system. That's not what the law's first paragraph is about. It's about a different type of system. So it was no fault of the appellate court that they didn't spend a lot of time on the first paragraph. The city's argument is essentially that because it did not violate the first paragraph, it could not have violated the second paragraph. And that's not proper logic. The city has also made an argument that the law only forbids point systems based on the issuance of citations or the number of citations issued. And that the law does not forbid municipalities from including either the issuance of citations or the number of citations issued. That argument is a misstatement of the law, because the law doesn't forbid any points of contact systems, but instead only forbids including citations in them. The city's theory of what the law should be is essentially an appeal to this court to change the text of the law. It wants the city to be able to provide things to them to suit its purposes. The city has also argued that the law is ambiguous. The law under review is not ambiguous. Neither party can simply claim that a statute is ambiguous. It must demonstrate that it is. The city failed to do so here. An ambiguous situation would exist if the law could be reasonably reasonable. Understood to have more than one equally reasonable meeting. Here there's no doubt what the law means. And the city has no doubt about what the law means. On page 17 of its original brief, about the middle of the page, the city stated that evaluating a police officer based on points of contact, which includes any quantifiable contact, is permissible except as provided in the final sentence. And counsel for the city made a similar statement here today. The city knows fully well that that last sentence of paragraph 2 is an exception to the prior sentence about what can be included as a point of contact. And they say so on the brief on page 17. And make reference to that statement to demonstrate that there's no ambiguity here. We're here today because the city just doesn't like what the law says. And that's not a valid reason for this Honorable Court to reverse the decision of the appellate court below who got it right. The union respectfully requests that the order of the appellate court below be affirmed. Yes, sir. I think one possible example was the city referenced, you know, it takes more time to issue a citation and therefore it should be worth more. But that's one possible explanation. But I think what that means is that the citation should not include the number of citations. And the reason for that is, they tried to issue a citation and it wasn't perfected. Or there might have been some issue with the citation itself. The officer would, in theory, the officer would still get credit for going to the effort of writing a citation, even though it may not have ended up to be a number that can be counted later on. I've kind of wondered about that too, but this case definitely involves the number of citations issue. The city admitted that it counts those. So there's no doubt what number of citations means. I have seen that. I've wondered about that myself. I don't know that it's necessarily different. It could be both. I don't know that or is the proper word to use there. As I'm speaking now, I could be more clear. I'm sure the legislature could always be more clear in what it says. But I think that's what that references, the practice, the procedure of going through the issuing of a citation. And the beginning of that section that prohibits requiring a specific number of citations, you know, the first sentence of 11-1-12, the first sentence, point to the policy of Sparta that you rely on, that you believe that language requires a specific number of citations. And that's what we did. We didn't make a complaint, but we abandoned that at the trial court. So this case does not involve a violation of the first paragraph. Thank you. Your argument comes down to the last sentence. Is that correct? It does, but I don't want to fall into the trap of saying we're trying to fixate on that last sentence. It's really the whole second paragraph. That whole second paragraph is about points of contact. And the last two sentences of that second paragraph define what points of contact are. The last sentence includes the exception, hey, you cannot include the issuance of citations with a number of citations issued. So that's really what they violated, but it's not, they violated the second paragraph. Any more questions? Thank you. Thank you, Mr. Chief. Ms. Laco? Just briefly, Your Honors. Council for the Union was asked about the interpretation of the fourth paragraph of the Act at issue here, and he was unable to answer the question. So it seems a bit, I don't know, a little bit confusing to me. It's duplicative for him to at the same time argue that the statute is unambiguous when he can't sit here and tell this court what the fourth sentence means. As part of that same questioning, Council was asked about the difference between the number of citations issued or the issuance, I'm sorry, the number of citations, or the issuance of citations. And from the city's perspective, it seems a little bit confusing to me that that terminology is used because it relates back to the first two paragraphs, or first two sentences, which use basically that general language. So we have the prohibitions in Sentence 1 and 2, the permissive, what's allowed in Sentence 3, and then Sentence 4 relating back both to the first, or to the first three sentences. And so just going back to a question that was asked earlier, are citations included? Well, first of all, let me back up. The third sentence does permit points of context. Are, in the city of Zapata system, are citations included? Yes. But the third sentence uses the language based on, for example, the citations that are in the city of Zapata for purposes of evaluating a police officer. So it says these points of contact are permissible to evaluate an officer, or evaluation systems based on points of contact are permissible. However, when you read the fourth sentence in conjunction with that, it basically says then that evaluation systems based on the issuance of citations, or based on the number of citations, are not permissible. The city of Zapata system is not based on citations. There is nowhere where an officer is required to write a certain number of citations, or does anyone consider that in evaluating officers. As to the number of points that an officer receives, under the city of Zapata system, officers receive more points for more time-consuming activity. Many of the activities that are referenced specifically in the Act, officers receive 1.4. A citation has been awarded two points because it's a more time-consuming activity. You will note that a review of the evaluation system also considers other activities that aren't specifically mentioned, and those activities may also receive enhanced points just because of the length of the time. So the system is not intended to in any way incentivize the writing of tickets. It is intended to reward or credit officers for the amount of time expended in certain activities. I would just note also that the union here today has not proffered or seduced any of the citations that are mentioned in the Act. We have not suggested any interpretation to this Court that would give effect to all the provisions of the statute when read together. And again, for that reason, we believe that the city's interpretation, with or without the use of extrinsic evidence, is the more reasonable and the correct one, and as a result, the decision of the appellate court should be an unconstitutional one. Thank you, Ms. Lyka.